Case No. 18-1324 et al. The NASDAQ Stock Market, LLC et al. Petitioner v. Securities and Exchange Commission Mr. Turing, the Petitioner for the NASDAQ Stock Market, LLC et al. Mr. Hanken, the Petitioner for the NASDAQ Stock Market, LLC et al. Mr. Frieda, the Respondent, and Mr. Phillips for the Intervener. Good afternoon, Your Honors, and may it please the Court. I'll be addressing the jurisdictional issue, and my colleague, Mr. Hanken, will be addressing the remaining issues in this case. This Court has jurisdiction to review the Commission's remand order and its related reconsideration order for three reasons. First, the remand order constitutes final agency action. Second, this Court has jurisdiction under the collateral order doctrine. And third, this Court has jurisdiction to treat the petitions for review as petitions for writs of mandamus. Turning first to final agency action, the remand order constitutes final agency action because it imposes extraordinary new procedural obligations on petitioners and marks the consummation of the agency's decision-making with respect to those procedures. What burden does it place or require on the petitioners? The petitioners are required within the first six-month period to promulgate new procedures for adjudicating each of the pending 400 fee challenges, and then within the next six-month period to provide SIFMA and Bloomberg an opportunity to be heard, to develop a record, and then to issue written decisions with respect to each of those pending 400 fee challenges. Does that make it a final order, or is that simply a procedural order within a proceeding that does not yet have a final order? It makes it a procedural order, Your Honor, because under the Supreme Court's decision in Bennett v. Speer, where an order imposes new obligations and where it marks the consummation of the agency's decision-making regarding those obligations, finality is present. Those hallmarks of finality are present here. In the words of the two concurring commissioners, the remand order imposes a momentous task on the petitioners. Indeed, they are being required to adjudicate 400 fee challenges in one-fifth of the time that it took the commission to adjudicate just two pending fee challenges. That is an extraordinary task. The commission's decision-making with respect to the ---- As to the ---- so there's two parts. One is creating or identifying procedures, and then the other one is processing the complaints. As to the former, the procedures, I assume all the SROs already have in place procedures for addressing complaints by people of limitations of access under 19D or rules 6D. I forget what the 6th number is, but 6. We don't have procedures, Your Honor, for adjudicating fee challenges under the denial-of-access rubric. No, but you have procedures in place already for addressing these. And so I didn't see in your briefs where you said, here's what else we will have to do. Here's what we'll have to do differently. And the commission, in its reconsideration decision, said, look, you already have these in place. You can just point to those. Or you can ---- you're free to just stand on what you have. It's what we're ---- I'm sorry. We're trying to give you ---- we've laid out this whole new process, this whole new way of thinking about what it is you have to demonstrate to have your fees sustained under 19D. And we're giving you another shot if you want it. You don't have to take it. But you probably want to take it because the other option is we're going to vacate your fees. Or you can take the shot. We're just giving you the option of taking the shot with the procedures you already have or if you want to make new procedures. Well, the way in which you have articulated the choice is very apt, Your Honor, because it is not a realistic choice. If the Petitioners do not promulgate these new procedures, then it's all but certain that the commission will vacate. But you said you don't have to do new procedures. You do if you ---- I don't under ---- I know you keep saying your procedures aren't for fees, but no one has explained to me in the briefing why the procedures you have in place can't be used to process an objection about a fee. Why can't they? Your Honor, the procedures that we have in place are for disciplinary proceedings, delisting proceedings. Those are different in kind from challenges to fees. Do you have any procedures in place for limitations or prohibitions on, say, membership? On membership? Yes. Okay. Why can't that be used here? What's different? I assume these procedures are notice, which they say you've already done, an opportunity to be heard, written or in-person hearing, and a decision. Correct? Is there more to the procedures than that? That is the general scope of these procedures, but, Your Honor ---- Why doesn't that work here? Because here we're talking about a challenge that is different in kind, one where SIFMA and Bloomberg have the burden to demonstrate that these challenged fees are invalid and where the Petitioners, according to the Commission, have their burden to issue written decisions with respect to each of these 400 ---- Did the Commission say that they have the burden? In our view, the ---- Okay. But normally ---- The challengers have the burden of proof, Your Honor. In your view, but the Commission didn't say that. The Commission disagrees with our view. Right. Okay. So that's not a difference in your procedures. So you have the burden of proof just like you normally do. You have, I guess you must have decision-makers in place, and you must have some rules somewhere that sort of say, once this happens within so many days, somebody files something, and someone else files something, and we'll have a hearing. Right? No one, I don't understand how to process. I get that you don't think you have to, and that you haven't before run fee objections through these processes. But I don't understand operationally how ---- why you cannot. And that's the essence of your great big burden argument here. Well, there are two burdens. The second burden is ---- I'm just talking about the procedures one. We'll get to the decision-making one. With respect to the procedures, the burden of proof is a pertinent difference. The burden of proof issue is an open ---- Okay. They've answered that for you. They've told you where the burden of proof is. Well, that's an open issue before this Court, Your Honor. It's the petitioner's view that the burden of proof rests with SIFMA and Bloomberg. We do not currently have procedures in place for enabling parties challenging a fee to build a record and to be afforded an opportunity to be heard with respect to their specific challenges to these fees. But even if we did have procedures in place, this would still be a momentous task for the petitioners because within the next six-month period, so a total of one year ---- So the main thing here is you just don't have a process for someone to come in and show why they believe this is a limitation or an unreasonable limitation on access? We do not have procedures for applicants who bear the burden of proof to challenge ---- Do you have procedures if they don't bear the burden of proof? We have procedures, for example, in a disciplinary setting where the burden of proof would rest with ---- And in non-disciplinary settings like membership decisions? I'm not aware of procedures we have in place where the burden of proof would rest on anyone other than the SRO. But even if ---- So why can't you apply that? How would the SRO in a proceeding we call a normal limitation or prohibition on, say, membership proceeding, I assume that the SRO would come forward with some demonstration of why it's made its decision, and the other side would respond, and then some decisionmaker would make a decision. Is that right? That would be how a disciplinary proceeding may proceed, for example. But that is not how a challenge to a fee would proceed because the burden of proof rests with the applicant. But even if we could jerry-rig our existing ---- That's the only objection I've heard so far to why your existing procedures don't work. Your Honor, the Commissioners themselves recognize how arduous this undertaking would be for the Petitioners. Well, two of them said it. Two of them did, and they characterized this as a momentous task. Because even setting aside the first six-month period, within the following six-month period, the Petitioners are required to adjudicate these 400 pending fee challenges and to issue written decisions with respect to each of them. That is one-fifth of the time that it took the Commission itself to adjudicate just two fee challenges. Are they 400 petitions to 400 different fees, or are there 100 petitions targeting one fee? There are 400 different rule filings. Some of the rule filings pertain to the same market data product, but there are 400 discrete rule challenges. The Petitioners will be required to adjudicate each of those. But your now analytical aspect of why you decide whatever you decide may well overlap for a lot of these. Your Honor, there may be some efficiencies at the margins, but it doesn't change the fact that we are being required to undertake a task that is exponentially more burdensome than the one that the Commission itself took five years to undertake with respect to just two fee challenges. Are you saying that the SROs just absolutely cannot do it, or just that it's going to be really hard? I am not representing to you that they are not up to the task, Your Honor. I am representing that this is a burdensome task, that it is a momentous task, and that is sufficient for purposes of finality, especially when coupled with the fact that this is the consummation of the agency's decision-making process with respect to these procedures. There will be no further Commission review of the propriety of these procedures. The Petitioners filed motions for reconsideration, which were denied. And importantly, the Petitioners do not even have the ability to get back to the Commission from their own proceedings on remand. The keys to judicial review rest with SIFMA and Bloomberg, which underscores the finality of the remand order. The remand order here bears all the hallmarks of finality that this Court identified. If the remand order is read as simply run it through your existing processes, you've got processes in place, run them through. Then, Your Honor, we would still have to issue 400 written decisions. But I'm trying to figure out how it would be final or subject to interlocutory review. How would you demonstrate those factors in that if that's all you have to do? We would still be on the receiving end of a substantial burden imposed by the Commission Well, and they also said if you don't want to do it, you can say we stand on our existing filings and we'll take it. So you could do that pretty fast. We could, Your Honor, but that's not a viable option, as you recognize, because under these circumstances it's certain that the Commission would conclude that the record as it exists is not sufficient to justify these fees. The Commission has a very different view of what the Petitioners' obligations are under these circumstances from the Petitioners themselves. The remand order here bears all the hallmarks of finality of the FERC remand order that this Court held to be final agency action in Public Utilities Commission of California v. FERC, where FERC remanded a matter to an agency, ALJ. The Court concluded that that was final agency action because there was no possibility that review at that point would interfere with ongoing agency proceedings. There was the possibility that this Court's review would obviate the need for further agency proceedings and conserve the Court's own resources, which is very much the case here when we have 400 pending fee challenges. And if there were further proceedings in that case, any subsequent appeal would raise analytically distinct issues from the appeal then before the Court, which is the case here as well. But even if this Court were to disagree, this Court would still have jurisdiction under the collateral order doctrine. The remand order conclusively determines that Petitioners will be required to implement these new burdensome procedures. The propriety of those procedures is an important question, especially because Petitioners are self-regulatory organizations with important quasi-governmental responsibilities under the Exchange Act. And the validity of these procedures is distinct from the merits of the underlying fee challenges initiated by SIFMA and Bloomberg. So if the Commission says the procedures are somehow deficient, you could seek judicial review of that. If the Commission in subsequent proceedings were to conclude that the procedures were deficient, but the problem, Your Honor, is that we as Petitioners do not have the ability to get back to the Commission. Our position is analogous to the SEC's position in Occidental Petroleum v. SEC, where the SEC itself invoked the collateral order doctrine to appeal a district court remand order. The SEC argued that it would not have the ability to appeal its own decision on remand and therefore should be entitled to take an immediate collateral order appeal. This Court agreed. This Court likewise afforded the Department of Labor the opportunity to take a collateral order appeal from a remand order in NAACP v. U.S. Sugar Corp. The Petitioners here are in an indistinguishable position because they lack the ability to pursue an appeal from their own decision on remand. Thank you. All right. Thank you very much. Good afternoon. May it please the Court again. With respect to the remand order itself, if the Court agrees with respect to the, the inapplicability in general of Section 19D to these petitions or the fact that SIFMA and Bloomberg don't have standing, that's sufficient to dispose of the remand order on its own. I should also note, by the way, that not all of the challenged rule filings relate to market data. Some of them relate to other types of products like colocation services, things we haven't had a chance to discuss, but they're not all market data products. Essentially, at a certain point, SIFMA and later Bloomberg began just filing these roughly every two weeks about every new fee filing that most of the exchanges dealt with. The SECs, even if the Court disagrees about the applicability of 19D and or standing, Again, standing that we're dealing with is not Article 3 standing. You're talking about standing to be heard within the agency's own standards, correct? Correct. What we're talking about is standing to bring a 19D petition or a Section 11A petition. Which is not adjudicated necessarily by Article 3 standing. Correct. This is not, correct. We're not dealing with the issue that arose in either Net Coalition 1 under Section 25A. What then would be the test for whether they have standing? The test for whether they have standing is what we were talking about earlier, whether they are agreed by a specific rule filing. Again, it would be something akin to or similar to an Article 3 analysis on associational standing, right? And you would have to look at this, and as I mentioned before, you would have to look at the particular statutes to determine whether associational standing made sense under those specific standards and statutes. And when you have a statute that refers, as do both Section 19D and Section 11A and also Rule 608, to specific actions by specific SROs against specific entities, that is not a situation in which associational standing makes sense. Because one way of phrasing it is that SIFMA is not one way to think about it is to think about a class action. SIFMA is not a member of the class it's purporting to represent. Well, that's not the same thing as associational standing. When we have an associational standing question under Article 3, we don't ask if there's a class. We ask whether there is an association. And whether the adjudicated party is an association whose interest in membership is such that if one of its members has standing or some members have standing, then that's good enough for associational standing. Right. And with respect to these statutes — I'm not sure what it is that precludes SIFMA or an association similarly, from having administrative standing in this kind of case. It's what we discussed before for the same reasons as in the ARCA Book Level 2 appeal. SIFMA didn't have standing to bring those proceedings because SIFMA doesn't buy market data products. It doesn't buy co-location services with respect to any of the petitioners that offer them. It's not a purchaser of these and no action — How about Bloomberg? Bloomberg, to the extent Bloomberg buys market data, it buys it as a vendor to distribute to its customers. So it's actually Bloomberg's customers. It wouldn't need associational. It would be standing on its own, right? Right. It might, although there's nothing in the record that addresses that. One of the things — Would you challenge their standing in the record? Oh, yes. That's actually — Bloomberg? On what basis did you challenge Bloomberg's standing? On the basis that they're not an aggrieved party. That's point 3D of the opening brief. Why aren't they an aggrieved party? Because for — and now I'll speak specifically with respect to NYSE. When — and let's talk only about market data. They — NYSE's market data fees are passed through Bloomberg. It bills Bloomberg and the — all the NYSE petitioners bill Bloomberg's customers directly for whatever market data they get through their Bloomberg terminals, for example. And so Bloomberg is not aggrieved by any NYSE fees. That's something that there is no evidence in the record about. To the extent the court had any questions about it, I think it would have to vacate for further development of the record. Just with respect to the Bloomberg issues, those are a relatively small number. With respect to SIFMA, I think there's no question that SIFMA itself doesn't have standing to bring all of these. And there is even less evidence in the record that — you know, regarding this issue. You make an argument that at least the plan petitioners are not registered securities information processors for purposes of the rule? Correct. The 11A process. Did you raise that argument before the commission? I don't recall whether it was raised in the motion for reconsideration. There was no — Did you raise it at any time before the commission? Well, we had no opportunity to raise any arguments before the commission before the remand order was issued. And, in fact, that's an issue with — for several of the petitioners, it was literally the first order that the commission issued because they had never participated in, for example, the procedural order. So then the first logical time to raise it is the reconsideration order. And you don't know if you raised it there? I don't recall if we specifically raised that issue. If you didn't raise it there, then how can you raise it here? Then you're — if we didn't raise it, and I'd have to check whether we did, then we would have waived that issue. Okay. The other — but the issues that we did raise are that this was — Are some of the plans registered securities information processors, or any of them? Well, are you talking about the plans or the plan participants? Because there's a difference. We're all involved here. So some of the plans are registered as SIPs, yes. But the plan participants can't be SIPs. The plan participants are NYSE, NASDAQ, for example, things like that. So then as to the — but as to the plans, then, which I thought some of the briefs were some of the parties here, the argument doesn't apply? No, the argument doesn't apply because it's not relevant to whether the participants are registered as SIPs. That's not an issue. And, again, the main — one of the main issues here is that this is — the position that the SEC has taken, that the petitioners are required to have these procedures in place under 6B-7, is a position that the SEC has never taken before. And not only has it never taken that position before, when it approved the long-term stock exchange's exchange registration a few months after issuing the remand order and the reconsideration — a few months after issuing the remand order, that stock exchange's rules, one of the newest stock exchanges, don't have these rules and don't have these procedures in them. All right. Thank you. Yeah, we saw that in your brief. Thank you very much. Mr. — I'm sorry, is it Frida or Freda? I'm sorry. Frida. Frida. Yeah, right. First time. All right. Can I throw a question out? I don't mean to hit you right out of the box, but if you want to start somewhere else, I'd just like you at some point to address that — what would happen to the remand order if we disagree — if we agree with petitioners on their 19D argument? Just — I'm just trying to sort what happens out in our decision trees here. What would happen — I mean, I think — I think it might depend on what that ruling looked like, but let me back up for a minute. The remand order — You want to start somewhere else and work into it? No, no, it's fine. I didn't really — I didn't really have anything I wanted to necessarily cover. I thought you were doing a great job. But the remand order only remanded those actions back to the SROs. And it — so it didn't make any determinations on the section 19D question. It didn't assert — yeah, it didn't make any ruling. So as — so before the SROs, on remand, they could dismiss if it were not a 19D — if they believed it was not properly a 19D — reviewable 19D limitation. Why wouldn't a remand — would the remand order just not rise or fall with whether there's 19 — I should say 19D slash 11A processes? Or would we remand to the commission to decide what it wants to do with the remand order? I mean, that might be the safest course. If we get to that. Yeah. No, that might be — if you got to that point, that might be the safest course. Because I do agree, it's — I mean, it's raised in both actions, but it's also tied up with the final order issue in the second one. One of the reasons why the Court need not view or should not view this as a final order, reviewable order, is because the predominant issue is raised in the case we just argued before. So, you know, and as you pointed out, it's a remand. So they have an opportunity to determine in the first instance whether or not these are reviewable limitations of access. And if one of — according to your reconsideration order, at least as I read it, what they could say on — as we're on the remand could go, we've already explained the basis for our fee. We're done. We think it's sufficient. We're done. Does it automatically come back up to the commission? Or would then whoever's challenging the fee would bring it to the commission? CIFMA, well, it then goes to the normal 19D process. So it would be either a challenger has to petition or the commission could call it on its own. But, yeah, that's an option. Oh, the commission can also just bring cases up on their own? Yeah. Okay. Yeah. All right. And at that level of review, is the record closed at that point? So the SRO couldn't, at that point, try to add more evidence to demonstrate that there is, you know, competition, et cetera? Well, the commission, as — I mean, I think if you think about this case, it's a great example of what flexibility the commission has in its rules. In 2014, it had the limitation of access challenge that we just talked about, and it sent it to an ALJ to open up the record. So it has that option under Rule 452 of its rules of practice. Or it has the option to remand if it wants the SRO to reopen the record or review something that it points out. So, yeah, it has flexibility to do both. Thank you. No problem. So in the reconsideration order where you said, look, maybe if you've already got 60 procedures in place, just identify them? So we're really not requiring a whole lot from you because presumably you already have them? Then why did the commission say come show them to us in six months? Haven't they already — I assume exchanges at some point early on are obligated to assure the commission they have appropriate procedures in place. So why are they supposed to come show you anything in six months? I mean, I think it just — it was just a timeline given so that they'd have a — Timeline for what? If they're just using the procedures they already have, why don't you normally do that? I mean, it seems to me the commission is not always consistent in its discussion. On the one hand, it seems like this is a big new thing. Go back. You're going to have to get procedures. And as they also say, tailor those procedures to the CFMA and Bloomberg cases or applications or complaints, whatever the phrase is. Tailor those procedures to them. So that seems to me quite inconsistent with the commission's statement that they can just sit on their existing procedures. How do you reconcile those two? Well, I think the commission was giving flexibility with some guideposts. Flexibility with guideposts when you say tailor your existing procedures? Right. What does that mean? I mean, I think it just means apply the procedure you have or develop a procedure to determine these cases. I mean, that's all they were doing in the remand order. Do you think that existing procedures are capable of — you must be aware of what procedures they have. Are they capable of handling these or do they need to be changed? I believe that it may — I mean, there are a number of petitioners in this case. I think the ones that I'm aware of, they could tailor, for lack of a better word, their procedures for other limitations to these specific cases. But, again, the commission really was just taking this because it had set forward the lead case procedure in 2014 when it joined these two main cases and sent it to an ALJ. It held all the remaining cases without objection that had been filed for further determination in light of CFMA. I think that's all it was doing in the remand order. And I think the tailor procedures language, I think, is just a guidepost, as I said, for, you know, to decide these cases in light of CFMA. If you're going to require a change in their procedures, I could be wrong, but I thought you had to do that by rulemaking. If we were requiring a change in procedures, yes. But as we pointed out, they should have them in place already or they don't have to develop any. No, but you thought for some reason they all had to come make a showing to you. Are you requiring them to show anything differently? To make a proper record on one of these fees in light of your decision to justify these fees, do they have to make a different or more comprehensive showing than they normally do for a fee under 19D or for disciplinary action under 19D? I mean, I think it's up to them to determine whether or not they're meeting the standards. No, no, no, it's up to them to survive the review. I can't say that because I don't have the cases before me. All I know is what we decided and I know what we remanded. I can't prejudge what the commission would say is sufficient. I mean, I think, again, this court in NEC 1 set forth the standards. Do you think we require them to do anything different or not? Because the reconsideration decision, at least on my read, is inconsistent. If you look at the original remand order and the reconsideration decisions together, they seem to be talking in different directions. So what am I supposed to do about that? Yeah, I think they can be reconciled because I think the intent of them, which is pretty clear, is that they're just intending to send this back in light of the settlement decision and that the SROs were expected to have in place procedures that they would be able to utilize to determine these cases. The commission provided much flexibility. It also noted that if they thought that the records that they had already were sufficient, they didn't need to do anything else at all to certify them. So the commission was trying to just provide a little bit of guidance and flexibility, but mostly it was just sending the cases back for determination in light of the settlement. So it didn't have to do them first? I'm sorry? Like someone else weighed through the process first? Well, I mean, I think, you know, again, as you pointed out, the commission has the ability to set aside and has the ability to remand under its rules if it finds that the records are inadequate. I think, you know, as this Court would do and if there were lots of courts... Is there a rule that allows remand? I'm sorry? Where did the statute or rules allow remand? It's not in 19F. Rule 452 of the commission's rules of practice. Okay. And what about in the statute has a different differentiation and does not reference remand in 19F? Right. It does, but, you know... It does not reference remand in 19F. Right. I was agreeing with you. Sorry. In 19F, but, you know, as this Court's recognized and the commission's recognized as well, the power to set aside often includes the power to remand, specifically when you're, you know, engaging in a process like the commission set forth in 2014 where you're holding cases to be decided in light of the other case or the lead cases. So that's... And as I said, that's... But not under 19F? Well, again, I mean, the statutory, as this Court's recognized, the power to set aside, you know, has the implicit power to remand. But also, more importantly, the commission's rules require or allow for remand in these circumstances. I assume that the petitioners didn't want the commission to set aside all the filings, and that was not what the commission had set out to do, you know, in 2014 when it said it was holding them in light of SFMA. If you imagine a world in which you didn't have the power to remand, would you have just had to vacate all of these? I mean... Or what would you have done with all these petitions? I can't... Again, I can't say because we... There's no record that we have given about what we thought of the petitions or the filings themselves. So, you know, I just... I couldn't say. All right. Thank you very much. Thank you. Attorney General Lee. Mr. Henkin, are you the only one doing rebuttal? Oh, I'm sorry. Mr. Coates. Sorry. I apologize. I'm easy to overlook, Your Honor, for no reason. No, not at all. Good afternoon, Your Honors. Again, may it please the Court. I think the right answer here, and the reason I asked for time, I think, frankly, is to be the one person here who expresses some righteous indignation at the petitioner's complaint that they've been thrown back into the briar patch as part of this process when all the Commission is trying to do is to give them every opportunity to justify what is otherwise completely unjustifiable. I mean, it may be that among those 400 fee filings, all of which they made, right, every one of them references competition as a constraint on whatever action they took. So the Commission, in my mind, could easily have said, given the absence of proof that competition constrains anything with regard to what these exchanges do in connection with my clients, they're all set aside, and then you can go back and start over again, which, of course, they would probably do about as quickly as the Commission acted. My recollection is that when this started, if I'm misrecalling, please tell me, that when this started, the Commission said we're going to treat the case we have before as sort of a lead case. Yes. When they said that, did that lead case mean simply we're going to do it first to work it through, or a lead case in that it was also a lead case on this competitiveness, showing that the competitive evidence is sort of the same in other fees as it is here, or was it just sort of a procedural vanguard? I mean, I think it was clearly just a procedural vanguard, but I do think, as it developed, and when they sent it to the administrative law judge and said, make a record here, let's create a real record and let's have an initial decision with respect to the role the competition plays, let's answer the questions that this Court asked in that Coalition I on substitutability and on whether or not order flow is a significant constraint. You would expect that the outcome of that, if the answer is these things don't make any difference whatsoever, the answer to that would be that none of these rules should be allowed to continue on under these circumstances, and then if the exchanges want to come back with a whole new set of changes, they're free to file again the next day, candidly, just as they did after Coalition I. It's just that I suspect, at this point now, having analyzed this issue with some care, the Commission would be more inclined to do what it's been doing since it reached this decision, which is to suspend these rules because, again, they aren't justified. We're talking about rules that have been in place, paid for by my clients for more than ten years, that are still demonstrably unfair and unreasonable. The last point I want to make before I step down is just with respect to associational standing, I mean, it's clear to me that the Commission has authority to do what it thinks is appropriate in terms of identifying who's been aggrieved and what the relationship ought to be, and the Commission here concluded that we are, you know, SIFMA's an aggrieved party, Bloomberg's an aggrieved party. The idea that somehow indirect purchasers are the real parties who should be bringing these actions, I mean, that's completely inconsistent with the way most courts think about this. The Commission cannot be faulted for saying this is an efficient way to resolve these issues under these circumstances. I urge you to uphold the Commission's decision. Thank you. I apologize. Mr. Hankin, now we'll give you two minutes. Thank you, Your Honor. With respect to the procedural order, I would refer the Court to page 9 of the joint appendix for this appeal. And specifically the sentence saying where the Commission said we will allow all parties to assert their views in the 50 proceeding while reserving the ultimate resolution of the remaining rule challenges in the 51 proceeding. That was the last thing anyone ever heard about any of these proceedings, which, as the Court knows, continued to multiply over the succeeding years. What's the option if they don't remand? Do they just adjudicate them all? Well, that's in fact our argument, that they don't have the power to remand. And then you wouldn't be able to add anything to the record. If they just adjudicate them, you wouldn't be able to add anything to the record. Well, we don't know. It would depend how they decided to adjudicate them. As Mr. Frieda said, there were a number of possibilities as to how they might choose to adjudicate them. We know that they don't have the power to remand them. Section 19E is the only part of Section 19 that permits remand, and that only applies to disciplinary proceedings. I just thought the remand here gave you all a second chance. Assuming your other arguments don't work, this gives you a second chance. Now that you've got heads up as to what kind of evidence they want to back up your competitiveness assertions, we're giving you a chance if you want to supplement your record. If you don't, you can stand on the record you have. And I just would have thought you all would be grateful for the second chance. Well, no, Your Honor, because what the remand order does is it requires the petitioners to treat all of these rule files, all of these petitions as 19D proceedings and Section 11A proceedings on their own, somehow address them without any guidance at all. And I think it's important to reflect back on the fact that two commissioners thought that the remand order gave effectively no guidance at all for this task. And for us to treat them as if they were denials of access when, in fact, there's nothing in the record indicating that there ever were any denials of access with respect to any of these specific rule filings, and yet all the petitioners are required to treat them as if they were. They filed 19D petitions, either Sitmer or Bloomberg filed 19D, whatever you call them, 19D petitions in all of these cases, correct? Correct. Did they have to make some showing, or did they just say? These are bare bones. Generally speaking, Your Honor, they were one to three pages long, two to three pages long. They indicated, and I'm not going to don't hold you. Did they assert that it was a limit, that the fee was a limit that wasn't justified? Bare bones assertion. Bare bones, and I'm just asking, did they assert it was a limit because it wasn't competitive? I don't recall whether they actually said because it wasn't competitive, or just whether they asserted that they were limitations or denials of access. And then they generally attached a list of the filings that each of the petitions was applying to. That's the sum and substance of them. And even that's not in the record, but that's the sum. And so we would urge the Court to vacate the remand order. Thank you very much. We appreciate counsel's efforts this morning and afternoon. The cases are both submitted.
judges: Millett, Wilkins, Sentelle